IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Anthony-Shane Martin, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 4:22-2043-HMH-TER |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Correct Care Recovery Solutions, | ) | |
| Erin Gaffney, Brian Davis, Jared | ) | |
| Anderson, Doctor Dubie, and Gina | ) | |
| Brisson, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Anthony-Shane Martin, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 4:22-2042-HMH-TER |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Wellpath/Correct Care, Erin Gaffney, | ) | |
| Lisa Young, Ray Walker, Lenoka Gavin, | ) | |
| Hodiyah Lewis, and Jill Cardaron, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III made in accordance with 28 U.S.C. § 636(b) and District of South Carolina Local Civil Rule 73.02. In these consolidated pro se actions, Anthony-Shane Martin ("Martin"), who is in custody of the South Carolina Department of Mental Health ("SCDMH") as part of the Sexually Violent Predator Treatment Program ("SVPTP"), alleges various constitutional violations against Defendants pursuant to 42 U.S.C. § 1983.[1]

---

[1] Martin has argued that he is not bringing this case under § 1983. This action, however, is properly brought pursuant to § 1983, as Martin is alleging federal constitutional violations by

In 4:22-cv-02042-HMH-TER, Martin alleges that his First Amendment rights were violated when Defendants confiscated his unapproved newsletter and three articles promoting the normalization of pedophilia. Martin, who was charged with rule violations for distributing these materials, also claims that Defendants violated his Eighth and Fourteenth Amendment rights by placing him on "wing restriction" before providing him with written notice of the charges. (2042 Am. Complaint, ECF No. 29.) In 4:22-cv-02043-HMH-TER, Martin alleges violations of his First, Eighth, and Fourteenth Amendment rights because SVPTP residents are prohibited from accessing the internet, calling 1-800 telephone numbers, possessing certain personal electronic devices such as laptops, and watching X-rated and R-rated movies. (2043 Am. Complaint, ECF No. 1-1.)

In his July 17, 2023, Report and Recommendation, Magistrate Judge Rogers recommends granting Defendants' motion for summary judgment and dismissing both actions with prejudice. (R&R, ECF Nos. 49 (2043 case) & 55 (2042 case).) Specifically, the magistrate judge found that (1) the challenged policies do not violate the First Amendment because they are rationally related to legitimate governmental interests in maintaining security and treating SVPTP residents; (2) Martin's due process rights were not violated because he was afforded notice and a hearing within a reasonable time of being placed on wing restriction; and (3) even if a constitutional violation

---

state actors. City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). ("Section 1983 authorizes a party who has been deprived of a federal right under the color of state law to seek relief through 'an action at law, suit in equity, or other proper proceeding for redress.'"). The SCDMH contracts with Defendant Wellpath, formerly known as Correct Care Solutions, to provide licensed medical and mental health care to participants in the SVPTP. By performing a function traditionally within the exclusive prerogative of the state, Wellpath employees are considered state actors for § 1983 purposes. See West v. Atkins, 487 U.S. 42, 55-56 (1988).

occurred, Defendants are entitled to qualified immunity on Martin's claims for money damages because they did not violate a clearly established right.  (R&R, generally, ECF Nos. 49 (2043 case) & 55 (2042 case).)

Martin filed timely objections to the Report and Recommendation.  (Objs., ECF Nos. 51 (2043 case) & 57 (2042 case).)  This matter is now ripe for review.

## REVIEW OF A REPORT AND RECOMMENDATION

A report and recommendation carries no "presumptive weight," and the responsibility for making a "final determination" remains with the court.  Mathews v. Weber, 423 U.S. 261, 271 (1976).  The court reviews de novo "those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" or "recommit the matter . . . with instructions."  28 U.S.C. § 636(b)(1).  "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).  In the absence of specific objections, the court reviews only for clear error, Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005), and need not give any explanation for adopting the report, Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

## DISCUSSION

Though many of Martin's objections are non-specific or unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, the court managed to glean two specific objections.  First, Martin objects that the magistrate judge erred in finding that legitimate

governmental interests support the SVPTP policy prohibiting him from distributing the newsletter and articles to other residents. (Objs. 2, ECF Nos. 51 (2043 case) & 57 (2042 case).) Second, Martin objects that the magistrate judge erred in finding that he was not denied due process when he was placed on wing restriction before he received notice of the charges against him. (Id., ECF Nos. 51 (2043 case) & 57 (2042 case).)

## **Objection #1**

Martin contends that Defendants violated his First Amendment rights by confiscating his newsletter and articles on pedophilia. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley. 482 U.S. 78, 89 (1987). In Turner, the Court identified four factors for assessing the reasonableness of a regulation:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there's an absence of ready alternatives to the regulation, which is evidence of [its] reasonableness.

Matherly v. Andrews, 859 F.3d 264, 281 (4th Cir. 2017) (internal quotation marks omitted) (citing Turner, 482 U.S. at 89-90). The Turner factors apply to civil detainees as well. Id. at 282 (applying the Turner factors to an Adam Walsh Act detainee's First Amendment claim). A detainee bears the burden of disproving the validity of a challenged regulation. Heyer v. U.S. Bureau of Prisons, 984 F.3d 347, 356 (4th Cir. 2021).

In this case, the magistrate judge did not err in finding that the SVPTP policy prohibiting the possession and distribution of unauthorized materials is reasonably related to "legitimate[,] nonpunitive" goals of security and rehabilitation. Id. (emphasis removed).

As for the first Turner factor, a rational connection exists between the restriction and the government's interests in maintaining safety and rehabilitating sexually violent predators. Id. As noted by Ron Lawrenz ("Lawrenz"), the SVPTP's Facility Administrator, circulation of Martin's newsletter poses serious security concerns. The newsletter suggests that SVPTP staff possess an ulterior motive to "harm" residents, characterizes civil commitment as "a fate worse than death," and calls for protests by SVPTP residents. (Mot. Summ. J Ex. 1 (Lawrenz Aff. ¶ 15), ECF Nos. 40-1 (2043 case) & 48-1 (2042 case).) The widespread dissemination of this rhetoric certainly could raise tensions at the facility and lead to resident-on-staff violence. See Pesci v. Budz, 935 F.3d 1159, 1168-70 (11th Cir. 2019) (finding "dispositive" the fact that inflammatory stories in a civil detainee's newsletter "*could* create a safety issue" (emphasis in original)).

Besides presenting security concerns, the newsletter promotes messaging that conflicts with the SVPTP's treatment goals. The newsletter claims that the SVPTP "does not work" and is simply a scheme devised by "lawyers, courts, evaluators, and private companies" to make money. (Mot. Summ. J. Ex. 2 (Dube Aff. ¶ 16), ECF Nos. 40-2 (2043 case) & 48-2 (2042 case).) Dr. Michelle Dube ("Dr. Dube"), a licensed psychologist and Clinical Director for Wellpath, explains that these messages promote feelings of hopelessness and hostility, perpetuate "grievance thinking," and create an "us versus them" dynamic between residents and staff. (Id. Ex. 2 (Dube Aff. ¶ 16), ECF Nos. 40-2 (2043 case) & 48-2 (2042 case).) Dr. Dube also explains that the

SVPTP policy prohibiting residents from sharing personal property is intended to curb "manipulative" behaviors:

> Residents are not allowed to share or exchange any personal property or items of any kind. Because the resident population is both intelligent and manipulative, they can create an economic system of exchange within the facility and use it to manipulate the behaviors and actions of other members (i.e., owe favors). For some residents, these very behaviors were used to "groom" their victims.

(Id. Ex. 2 (Dube Aff. ¶ 18), ECF Nos. 40-2 (2043 case) & 48-2 (2042 case).)

In opposition, Martin argues that the court should not "blindly defer" to the security concerns of SVPTP officials. (Objs. 2, ECF Nos. 51 (2043 case) & 57 (2042 case).) SVPTP officials, however, must be able to "anticipate security problems and . . . adopt innovative solutions" to those problems to manage the facility effectively. Turner, 482 U.S. at 89 (emphasis added). In other words, "specific evidence of a causal link between a . . . policy and actual incidents of violence" is not required. Pesci, 935 F.3d at 1168 (quoting Prison Legal News v. Sec'y, Fla. Dep't of Corr., 890 F.3d 954, 968 (11th Cir. 2018)); see, e.g., Simpson v. County of Cape Girardeau, 879 F.3d 273, 280 (8th Cir. 2018) ("Cape Girardeau may seek to prevent harm that has yet to occur and, as a result, is not required to provide evidence of previous incidents of contraband reaching inmates through the mail in order to adopt a postcard-only incoming mail regulation."); Singer v. Raemisch, 593 F.3d 529, 536 (7th Cir. 2010) ("The question is not whether [a fantasy role-playing game] has led to gang behavior in the past; the prison officials concede that it has not. The question is whether the prison officials are rational in their belief that, if left unchecked, [the game] could lead to gang behavior among inmates and undermine prison security in the future."). Rather, the first Turner element concerns only whether a "rational connection" exists between the government's interests and the challenged regulation. Turner, 484

U.S. at 89; see also Heyer, 984 F.3d at 357 ("Although one may question the strength of the connection between BOP's nonpunitive interests and its ban on point-to-point calls, BOP has satisfied Factor One. To the extent BOP has identified risks posed by point-to-point calls, banning the practice certainly prevents these risks from occurring, and thus the ban bears at least some connection to BOP's nonpunitive interests." (internal alteration and quotation marks omitted)). Thus, because there is no genuine issue of material fact that the SVPTP policy at issue bears a rational connection to legitimate security and rehabilitative interests, the first Turner factor favors Defendants.

The second Turner factor – whether the detainee has alternative means of exercising the asserted right – also supports upholding the policy. Martin remains free to verbally communicate his views to other residents and may submit articles for publication in the SVPTP's resident-run newsletter. (Mot. Summ. J. Ex. 2 (Dube Aff. ¶ 19), Nos. 40-2 (2043 case) & 48-2 (2042 case).)

As for the third factor, Lawrenz's and Dr. Dube's averments make clear that allowing the circulation of Martin's unapproved newsletter and the articles normalizing pedophilia would have a "significant ripple effect" on the SVPTP's operations. Turner, 482 U.S. at 90 (internal quotation marks omitted). Again, Martin's writings and the articles pose legitimate security concerns and have the potential to disrupt detainee treatment.

The fourth and final Turner factor also favors Defendants. Martin has failed to identify a "ready alternative[]" that would "fully accommodate" his First Amendment rights at "*de minimis* cost" to the SVPTP's legitimate security and rehabilitative interests. Id. at 90-91.

In sum, all four Turner factors weigh decisively in Defendants' favor. As a result, the court finds that Martin has failed to show a genuine issue of material fact about whether the

7

SVPTP policy at issue violates his First Amendment rights. Martin's first objection therefore lacks merit.

**Objection #2**

Martin also objects to the magistrate judge's determination that he was not denied due process when he was placed on wing restriction before he received notice of the charges against him.

Civilly committed individuals "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 322 (1982). Like pretrial detainees, they may not be subjected to conditions that amount to "punishment" without due process. Christian v. Magill, 724 F. App'x 185, 188 (4th Cir. 2018) (unpublished); Matherly, 859 F.3d at 275 (applying "the standard for constitutionally impermissible 'punishment'" applicable in "the pretrial-detainee context" to claims brought by an Adam Walsh Act detainee); see also Dilworth v. Adams, 841 F.3d 246, 250-51 (4th Cir. 2016). The level of process to which a civil detainee is entitled, however, depends on "whether a restriction was imposed for disciplinary or administrative purposes." Williamson v. Stirling, 912 F.3d 154, 175 (4th Cir. 2018). If a particular restriction is "disciplinary" – that is, it is "expressly punitive" or "not reasonably related to a legitimate, nonpunitive purpose" – "the detainee is entitled to notice of the alleged misconduct, a hearing, and a written explanation of the resulting decision." Id. at 175, 182. If, on the other hand, a restriction was imposed for "administrative" purposes, due process requires that the detainee receive "some notice of the charges" and "an opportunity to present his views" "within a

reasonable time" after being placed in segregation. Id. at 183 (internal quotation marks omitted); see Hewitt v. Helms, 459 U.S. 460, 466 & n.8 (1983).

Here, the record reflects that Martin was charged with two rule violations on November 5, 2021, one for the unauthorized possession of the newsletter (a minor violation) and the other for possession of pornography (a major violation). (Mot. Summ. J. Ex. 3 (Hearing Disposition Regarding Newsletter 2), & Ex. 5 (Hearing Disposition Regarding Pornography 2), ECF Nos. 40-3, 40-5 (2043 case) & ECF Nos. 48-3, 48-5 (2042 case).) Martin was placed on wing restriction that same day for "investigatory" purposes and received written notice of the minor violation on November 9. (Id. Ex. 1 (Lawrenz Aff. ¶ 21), ECF Nos. 40-1 (2043 case) & 48-1 (2042 case).) A hearing was then held on November 11, at which time Martin pled guilty to both violations. (Id. Ex. 3 (Hearing Disposition Regarding Newsletter 2), & Ex. 5 (Hearing Disposition Regarding Pornography 2), ECF Nos. 40-3, 40-5 (2043 case) & ECF Nos. 48-3, 48-5 (2042 case).) He did not remain on wing restriction following the disposition of these charges. (Id. Ex. 3 (Hearing Disposition Regarding Newsletter 2), & Ex. 5 (Hearing Disposition Regarding Pornography 2), ECF Nos. 40-3, 40-5 (2043 case) & ECF Nos. 48-3, 48-5 (2042 case).)

On February 2, 2022, Martin was charged with two new minor violations related to his possession and distribution of the three articles. (Resp. Opp'n Mot. Summ. J. Ex. G (February Violation Notices 76-77), ECF No. 44-1 (2043 case) & 52-1 (2042 case).) Though the record is unclear whether Martin was ever placed on wing restriction for these violations, he received notice of the charges on February 8 and appeared before a Behavior Management Panel on February 10. (Id. Ex. G (February Violation Notices 76-77 & Hearing Disposition Regarding Articles 78), ECF No. 44-1 (2043 case) & 52-1 (2042 case).) At least one of the charges was

9

substantiated at the hearing, and Martin received only a verbal warning. (Id. Ex. G (Hearing Disposition Regarding Articles 78), ECF No. 44-1 (2043 case) & 52-1 (2042 case).)

Based on these facts, and viewing them in the light most favorable to Martin, no reasonable jury could find that he was denied due process. To begin, there is no genuine issue of material fact that Martin's placement on wing restriction was for valid administrative – and not disciplinary – reasons. Lawrenz's undisputed affidavit shows that Martin was placed on wing restriction in November 2021 for "investigat[ive]" purposes pending his Behavior Management hearing. (Mot. Summ. J. Ex. 1 (Lawrenz Aff. ¶ 21), ECF Nos. 40-1 (2043 case) & 48-1 (2042 case).) This decision aligned with SVPTP policy, which provides that officials may segregate residents charged with a rule violation "to remove them from the general population, to search their room, belongings, and person for contraband, and to hold them temporarily in a more secure setting." (Id. Ex. 1 (Lawrenz Aff. ¶ 21), ECF Nos. 40-1 (2043 case) & 48-1 (2042 case)); see Dilworth, 841 F.3d at 255 ("[P]risons and jails may and routinely do place inmates charged with disciplinary infractions in 'administrative segregation' pending their disciplinary hearings, allowing both prison officials and inmates time to investigate and prepare for those hearings.").

Furthermore, the record reflects that Martin received all the process he was due under Williamson and Hewitt. Martin received notice of the charges against him four days after his placement on wing restriction in November 2021 and six days after his placement in February 2022 (assuming he was in fact segregated then). (Am. Compl Ex. B (November Violation Notice 21), ECF No. 29-1 (2042 case)); (Resp. Opp'n Summ. J. Ex. G (February Violation Notices 76-77), ECF No. 44-1 (2043 case) & 52-1 (2042 case).) In each instance, Martin was provided a hearing two days after receiving notice of the charges. (Mot. Summ. J. Ex. 3 (Hearing

10

Disposition Regarding Newsletter 2), ECF No. 40-3 (2043 case) & 48-3 (2042 case)); (Resp. Opp'n Summ. J. Ex. G (Hearing Disposition Regarding Articles 78), ECF No. 44-1 (2043 case) & 52-1 (2042 case).)  These undisputed facts show that Martin received "some notice of the charges against him and an opportunity to present his views" about the charges "within a reasonable time" following his placement on wing restriction.  Hewitt, 459 U.S. at 476 & n.8.  Thus, Martin's objection that he was denied procedural due process lacks merit.

## CONCLUSION

Having reviewed de novo the portions of the Report and Recommendation to which Martin objected, and having reviewed the remaining portions for clear error, the court adopts Magistrate Judge Rogers' Report and Recommendation and incorporates it herein.

It is therefore

**ORDERED** that Defendants' motions for summary judgment, docket numbers 40 (2043 case) and 48 (2042 case), are granted.

**IT IS SO ORDERED**.

> s/Henry M. Herlong, Jr.
> Senior United States District Judge

Greenville, South Carolina
August 14, 2023

**NOTICE OF RIGHT TO APPEAL**

The Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.